BONNIE B. CURREY

*v.*

STATE OF W. VA. HUMAN RIGHTS COMMISSION,

AND E. I. DU PONT DE NEMOURS & CO.

(No. 14460)

Decided December 16, 1980.

*Katz, Kantor, Katz, Perkins & Cameron and Norris Kantor* for appellant.

*Chauncey H. Browning,* Attorney General, *Gail Ferguson,* Assistant Attorney General, for Human Rights Com'n.

*Spilman, Thomas, Battle & Klostermeyer, George G. Guthrie and Carl L. Fletcher, Jr.,* for E. I. du Pont.

*Kathleen Strasbaugh, Franklin D. Cleckley, Emily Spieler, Penelope Crandall,* for amicus curiae, NAACP, Mountain State Bar and NOW.

HARSHBARGER, JUSTICE:

The West Virginia Human Rights Commission denied Bonnie Currey a public hearing on a sex discrimination charge against E. I. DuPont DeNemours & Co., after an investigating commissioner determined there was probable cause to believe that her allegations were true. Currey applied to the Kanawha County Circuit Court for a writ of error authorized by our Administrative Procedures Act, W. Va. Code 29A-1-1, *et seq.,* for contested cases, praying that the matter be remanded to the commission for hearing. The circuit court ruled that hers was not a contested case, dismissed her application, and she appealed to us.

Currey's complaint charged DuPont with sex discrimination by failing to promote her and by paying women less than men for the same work, contrary to Code, 5-11-9, *infra.* The case was docketed by the HRC and after reviewing evidence obtained during the commission's investigation, an investigating commissioner credited her complaint as true and commenced conferences and conciliation efforts according to Code, 5-11-10, *infra.* The efforts failed, resulting in a recommendation by HRC staff that the case be considered for public hearing. The commission then reviewed the complaint anew, and refused to have a hearing.

## I.

After a finding of probable cause by staff, does the commission have discretion to deny a public hearing? What is a "contested case" per Code, 29A-1-1(e)? These were the

questions extensively briefed by appellant, the commission, DuPont and amici curiae (West Virginia Conference—National Association for the Advancement of Colored People, Mountain State Bar Association, Inc., and West Virginia Chapter of the National Organization for Women), with emphasis on state and federal due process requirements for property and liberty interests. However, we believe this is a rather simple matter of statutory construction.

The Human Rights Act must be read in *pari materia*.

> Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.
>
> *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975), Syllabus Point 5.

The Act declares it "the public policy of the State of West Virginia to provide all of its citizens equal opportunity for employment" and "[e]qual opportunity in the areas of employment . . . is hereby declared to be a human right or civil right of all persons without regard to . . . sex", Code, 5-11-2; *State Human Rights Commission v. Pauley*, 158 W.Va. 495, 212 S.E.2d 77, 79 (1975). The commission is responsible for "eliminat[ing] all discrimination in employment . . . by virtue of . . . sex". Code, 5-11-4.

The Legislature defined unlawful discriminatory activities and provided a forum and procedure to remedy them. Section 9(a) makes it an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required". Code,

5-11-9(a). An individual aggrieved by such practice has ninety days during which to file a formal, verified complaint with the commission. Code, 5-11-10. Section 10 mandates that the commission conduct a prompt investigation. The use of the word "shall" throughout this section indicates that the commission's duties are nondiscretionary. *Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238 (1978); *Bounds v. State Workmen's Compensation Com'r.*, 153 W.Va. 670, 172 S.E.2d 379 (1970).

> If it shall be determined after such investigation or meeting that probable cause exists for substantiating the allegations of the complaint, the commission shall immediately endeavor to eliminate the unlawful discriminatory practices complained of by conference, conciliation and persuasion.
>
> * * * * *
>
> In case of failure so to eliminate such practice or in advance thereof, *if in the judgment of the commission circumstances so warrant*, the commission shall cause to be issued and served a written notice, . . . requiring the person, employer, . . . to answer the charges of such complaint at a hearing before the commission . . . .
>
> Code, 5-11-10.<br>(Emphasis added.)

Does the phrase "if in the judgment of the commission circumstances so warrant", refer to the commission's duty to issue notice and hold a hearing, or does it modify "or in advance thereof", meaning that the commission may initiate notice and hearing before termination of the conciliation phase, if in its judgment further efforts would be wasteful or unproductive.

Rules promulgated by the commission for proceedings under the act,[1] are helpful.

> 3.10 *Dismissal of Complaint*—Where the allegations of a complaint on its face, or as amplified by the statements of the complainant to the Commission, disclose that the complaint is not timely filed

---

[1] The commission derives its authority to promulgate rules and regulations from Code, 5-11-8(h).

or otherwise fails to state a valid claim for relief under the Act, the Commission my [sic] dismiss the complaint without further action. The Commission may also dismiss a complaint if the complainant fails or refuses to cooperate with the Commission or if the allegations of the complaint shall become moot.

No party has alleged that any of these conditions for complaint dismissals occurred. Rule 4.05(a), effectuating Code, 5-11-10 requires:

[H]e and/or the Commission's staff shall immediately endeavor to eliminate the unlawful discriminatory practice by conference, conciliation and persuasion.

A key to our interpretation is in Rule 4.09:

4.09 *Time Limitation for Conciliation*—Failure to arrive at a satisfactory adjustment within forty-five (45) days after respondent is notified in writing of a finding of probable cause may constitute sufficient reason for the commission to determine efforts at conference and conciliation to be a failure. For good cause, *such determination may be made at an earlier date.* (Emphasis added.)

This rule reveals that the HRC agrees with our conclusion that Code, 5-11-10, simply permits termination of conference and conciliation, and allows initiation of hearings before the forty-five day conference and conciliation period is exhausted; and does not mean that a complaint can then be dismissed by the commission without hearing.

No rule or statute provides for post-conciliation administrative review of a probable cause determination or reconsideration of an initial probable cause decision after the initiation of conference and conciliation efforts. Rule 5.01 specifically applies to what happens after a finding of probable cause and failure of conference and conciliation:

Rule 5.01 *Issuance and Service of Notice of Public Hearing*—After a finding of Probable Cause to credit the allegations of the complaint and in case of failure to eliminate the alleged unlawful

> discriminatory practice by conference, conciliation and persuasion, *or in advance thereof, if in the judgment of the Commission circumstances so warrant, the Commission shall cause to be issued and served in the name of the Commission, a written notice of hearing* .... (Emphasis added.)

The determination of *when* conciliation efforts have failed is a matter of judgment for the commission, *see* Rule 4.09, *supra*; and it is that, rather than whether or not to have a public hearing, that is discretionary.

Our legislature preferred that citizens use this statutory procedure to decide human rights complaints through the hearing stage:

> [A]s to acts declared unlawful by section nine [§5-11-9] of this article the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without resorting to the procedure provided in this article, he may not subsequently resort to the procedure herein ....
>
> Code, 5-11-13.

Having chosen the state agency designed to ameliorate her complaint, Currey is now precluded by statute from going elsewhere.[2] Surely, the commission cannot deny her a public hearing.

## II.

The Administrative Procedures Act defines "contested case" as:

> [A] proceeding before an agency in which the legal rights, duties, interests or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing, but shall not include cases in which an agency issues a

---

[2] We do not discuss the constitutionality of this provision at this time.

license, permit or certificate after an examination to test the knowledge or ability of the applicant where the controversy concerns whether the examination was fair or whether the applicant passed the examination, and shall not include rule making; . . . .

Code, 29A-1-1(e).

We have just stated that the commission was required by law to hold a hearing on Currey's sex discrimination charge. Therefore, the dismissal of Currey's complaint after a finding of probable cause was an agency action affecting the legal rights, duties, interests and privileges of a specific party required to be determined by a hearing and falls squarely within the statutory definition of contested cases.

"Any party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter". Code, 29A-5-4(a). The circuit court erred when it dismissed her appeal and we must reverse and remand with instructions that the circuit court order the West Virginia Human Rights Commission to have Currey's hearing.

*Reversed and remanded.*