# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2015 Term

———————————

No. 14-0214

———————————

**FILED**

**April 24, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**PATRICIA S. REED, Commissioner**
**of the West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner**

**v.**

**JASON L. THOMPSON,**
**Petitioner Below, Respondent**

_____

**Appeal from the Circuit Court of Wayne County**
**The Honorable Darrell Pratt, Judge**
**Civil Action No. 13-P-038**

**AFFIRMED**
_____

**Submitted: April 8, 2015**
**Filed: April 24, 2015**

Elaine L. Skorich, Esq.              Jason L. Thompson
Office of the Attorney General       *Pro Se*
Charleston, West Virginia            Kenova, West Virginia
Counsel for the Petitioner

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.**

**SYLLABUS BY THE COURT**

"Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication." Syl. Pt. 2, *Mountaineer Disposal Serv., Inc. v. Dyer*, 156 W.Va. 766, 197 S.E.2d 111 (1973).

**Justice Ketchum:**

The Petitioner, Patricia S. Reed, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), appeals an order of the Circuit Court of Wayne County.[1] The circuit court reviewed two final orders by the Office of Administrative Hearings ("OAH"): (1) an original final order reversing the DMV's revocation of Jason L. Thompson's ("Mr. Thompson's"), driver's license; and (2) a revised final order reversing the original final order, and affirming the DMV's revocation of Mr. Thompson's driver's license.

The circuit court found that the OAH had no authority to revoke its original final order. It also found that there was insufficient evidence showing that Mr. Thompson was served with notice regarding the DMV's motion requesting that the OAH reconsider its original final order. Accordingly, the circuit court reversed the OAH's revised final order and reinstated the OAH's original final order.

Upon review, we affirm the circuit court's order. We find that the OAH had no authority under statute or its administrative rules to reconsider, revoke, or amend its original final order.

---

[1] Steven O. Dale was the Commissioner of the West Virginia DMV when the facts giving rise to this appeal occurred. Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the current Commissioner, Patricia S. Reed, has been automatically substituted as the named petitioner herein.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises out of the DMV's revocation of Mr. Thompson's driver's license on June 8, 2012, because he was arrested and charged with DUI.[2] Mr. Thompson requested a hearing before the OAH to contest the DMV's revocation of his license. The OAH held two hearings as to whether he was guilty of DUI: one in October 2012 and another in February 2013. Both Mr. Thompson and the arresting officer testified before the OAH.

On May 16, 2013, the Chief Hearing Examiner of the OAH issued a final order – what we call the "original final order" – reversing the DMV's revocation of Mr. Thompson's driver's license. In doing so, the OAH considered testimony from Mr. Thompson and the arresting officer. The original final order noted that Mr. Thompson's story conflicted with that of the arresting officer. The OAH believed Mr. Thompson and found that "[he] did not commit an offense involving [DUI]" because he was not driving on the night in question. Pursuant to its obligation to resolve conflicts of testimony by a "reasoned and articulate decision," the OAH provided an explanation for why it found Mr. Thompson's testimony more credible.[3] Mr. Thompson received a copy of the OAH's original final order (which effectively reinstated his driver's license) on June 1, 2013.

---

[2] Mr. Thompson's undisputed testimony was that the criminal charges arising out of his arrest were dismissed.

[3] *See* Syl. Pt. 6, in part, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) ("[An] agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision[.]").

However, nine days after the original final order was issued, the DMV filed a motion for reconsideration with the OAH requesting that it revoke the original final order. According to the DMV, its motion for reconsideration was merely "a *reiteration* of the argument provided in the [DMV's] Proposed Findings of Fact and Conclusions of Law" tendered after the revocation hearing. (Emphasis added). This motion did not state any new facts or allege any newly discovered evidence or fraud in the OAH's proceedings. Mr. Thompson claims to have never received notice of the DMV's motion for reconsideration.

On June 28, 2013, the OAH granted the DMV's motion for reconsideration, but it did not conduct a hearing on the matter. Likewise, the OAH issued a revised final order, revoking its original final order ("revised final order"). It stated, without explanation, that the original final order was "legally deficient and erroneous." The revised final order did not allude to any newly discovered evidence or fraud in the entry of its original final order. Rather, it concluded that "as a matter of law . . . [Mr. Thompson] drove a motor vehicle . . . while under the influence of alcohol[,]" on the ground that he failed to advise the arresting officer he was not driving on the night of his arrest. The OAH's revised final order effectively reinstated the DMV's revocation of Mr. Thompson's driver's license.

Mr. Thompson appealed the OAH's revised final order to the Circuit Court of Wayne County. The circuit court refrained from second-guessing the factual determinations made by the OAH. Rather, the circuit court based its decision solely "on the procedures following the [entry of the original] Final Order[.]" The circuit court

3

found that the OAH had no statutory or regulatory authority to revoke its original final order. The circuit court also found that there was nothing in the record and no evidence showing that notice was sent to Mr. Thompson regarding the DMV's motion for reconsideration. Accordingly, the circuit court reversed the OAH's revised final order and reinstated the OAH's original final order. In doing so, the circuit court effectively reinstated Mr. Thompson's license. The DMV appealed the circuit court's order to this Court.

**II.**
**STANDARD OF REVIEW**

In reviewing a final order of an administrative agency, we have held:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983). Furthermore, "[o]n appeal of an administrative order from a circuit court, this Court . . . reviews questions of law

4

presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

### III.
### ANALYSIS

In 2010, the Legislature created the OAH and gave it power to hear appeals of certain orders and decisions by the DMV. *W.VA. CODE* § 17C-5C-1 [2010]. The OAH is authorized to conduct hearings over these matters consistent with the statutory provisions in chapters 29A ("State Administrative Procedure Act"), 17B, and 17C of the *West Virginia Code*.[4] *W.VA. CODE* § 17C-5C-4 [2010]. At the time of the entry of the revised final order, the OAH had not adopted any administrative rules as it was authorized to do by West Virginia Code § 17C-5C-4a [2012]. *See W.VA. C.S.R.* § 105-1-1 [2013] (setting July 1, 2013, as effective date of OAH's administrative rules).

The circuit court found that there was no statutory provision or administrative rule granting the OAH the authority to reconsider, revoke, or amend its original final order.[5] Therefore, the OAH's revised final order exceeded its statutory authority. The DMV contends that the OAH may reconsider, revoke, or amend its original final order, and therefore, the OAH's revised final order was valid.

---

[4] Chapter 17B governs driver's licenses, and chapter 17C pertains to traffic regulations and laws of the road.

[5] The circuit court correctly refrained from applying the OAH's administrative rules, Title 105 of the *West Virginia Code of State Rules*, because the OAH issued its revised order before its rules became effective.

This Court has held that an administrative agency may not exercise authority which is not given to it expressly or impliedly in statute.

> Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. *They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication.*

Syl. Pt. 2, *Mountaineer Disposal Serv., Inc. v. Dyer*, 156 W.Va. 766, 197 S.E.2d 111 (1973) (emphasis added). *See also State ex rel. Hoover v. Berger*, 199 W.Va. 12, 19, 483 S.E.2d 12, 19 (1996) ("An administrative agency . . . has no greater authority than conferred under the governing statutes.").

An administrative agency's reconsideration of its own final order before judicial review is not valid unless the agency was given the authority under a statute or administrative rule to do so. *See Mustard v. City of Bluefield*, 130 W.Va. 763, 766, 45 S.E.2d 326, 328 (1947) (holding that, in absence of specific authority in zoning ordinance or in statute upon which ordinance was based, a board of adjustment had no power to rehear and reconsider its final order).

Whether an administrative agency has authority under a statute or administrative rule to reconsider, revoke, or amend its final order entails a two-part inquiry. *See Atl. Greyhound Corp. v. Pub. Serv. Comm'n*, 132 W.Va. 650, 659-61, 54 S.E.2d 169, 174-75 (1949). The first question is whether an agency's power to reconsider its own final order is expressly or impliedly granted by statute. *Id*. at 659-660, 54 S.E.2d at 175. If not, the second inquiry is whether the following two conditions are

6

met: (a) the Legislature granted the agency authority to adopt administrative rules of procedure; and (b) the agency adopted an administrative rule allowing it to reconsider its own final orders. *Id.* at 661, 54 S.E.2d 175. If an agency has authority to reconsider its own final order under an administrative rule (as opposed to a statute), the scope of the agency's authority is strictly limited to what is contained in the rule. We have held:

> [An administrative agency], by rule based upon a statute which empowers it to prescribe rules of practice and procedure and the method and the manner of holding hearings, has the authority to grant, *within the time and in the manner provided by such rule*, a rehearing of a final order entered by the commission in a proceeding of which it has jurisdiction.

Syl. Pt. 1, *Id.*, 132 W.Va. 650, 54 S.E.2d 169 (emphasis added).

It is clear that the OAH had not been granted express statutory authority to reconsider, revoke, or amend its original final order. While the Legislature has provided that parties to an order by the OAH may appeal to the circuit court, no provision in the *West Virginia Code* authorizes the OAH to reconsider, revoke, or amend its own orders. *See W.Va. Code* § 17C-5A-2(s) [2012].

Furthermore, the OAH had no implied authority to reconsider, revoke, or amend its original final order. In making this determination, an agency has only as much authority as is necessary to execute its duties. Furthermore, this Court must presume that the Legislature did not intend to confer upon the agency any greater authority than what is clearly indicated in statutory language. We have held:

> Although an express grant of powers will be determined to include such other powers as are necessarily or reasonably incident to the powers granted, the powers *should not be*

7

*extended by implication beyond what may be necessary for their just and reasonable execution.* When a court is asked to find implied powers in a grant of legislative or executive authority it must assume that the *lawmakers intended to place no greater restraint on the liberties of a citizen than was clearly and unmistakenly indicated by the language they used*.

*McDaniel v. W.Va. Div. of Labor*, 214 W.Va. 719, 727, 591 S.E.2d 277, 285 (2003) (quoting *Walter v. Richie*, 156 W.Va. 98, 108, 191 S.E.2d. 275, 281 (1972)) (citation and quotations omitted) (emphasis added).

We have recognized limited circumstances in which an agency's implied authority allows it to reconsider, revoke, or amend its own final order. *See Atl. Greyhound Corp.*, 132 W.Va. at 660, 54 S.E.2d at 175 (an agency has authority to reconsider its final order when it has continuing jurisdiction over the matter). *See also Lane v. U.S. of Am. ex rel. Mickadiet*, 241 U.S. 201, 209 (1916) (agency had an implied right to reconsider its final order in cases of newly discovered evidence, fraud, or when agency controls matter to which the order relates).[6] This appeal does not involve any of these narrow circumstances.

Lastly, an administrative agency may have authority to reconsider, revoke, or amend its own final order when authorized to do so by its administrative rules. There were no administrative rules which applied to the OAH when it reconsidered its original final order in June 2013. Starting July 1, 2013, Rule 105-1-18.1 of the *West Virginia Code of State Rules* provides that the OAH may reconsider its own final order when there

---

[6] An example of an agency controlling the matter to which the order relates is Native American land in the hands of the Department of the Interior. *See generally Lane*, 241 U.S. 201.

is a "clerical or administrative error." The rule contains several examples of "clerical or administrative error[s]," including typos, failure to consider relevant evidence, or a failure to rule on a pending motion. *W.VA. C.S.R.* § 105-1-18.1 [2013].

The OAH reconsidered its original final order *before* its administrative rules became effective, and therefore, the OAH did not derive authority from its administrative rules to do so.[7] Accordingly, the OAH had no expressed or implied authority under statute or its administrative rules to reconsider, revoke, or amend its original final order. Being a creature of statute, the OAH's reconsideration of its original final order is invalid if not supported by some grant of statutory or regulatory authority.

Our holding does not mean that an aggrieved party to an order by the OAH is without recourse. West Virginia Code § 17C-5A-2 provides that both the driver and the Commissioner are entitled to judicial review and may appeal to the circuit court as provided in the West Virginia Administrative Procedure Act. *See W.VA. CODE* § 29A-5-4 (1998). Accordingly, the DMV should have appealed to the circuit court rather than requesting the OAH to exceed its statutory authority by revoking its original final order.

**IV.**
**CONCLUSION**

For the reasons set forth herein, the circuit court was correct in finding that the OAH was without authority under statute or its administrative rules to reconsider,

---

[7] We do not consider in this appeal whether the OAH's administrative rules would have given it authority to reconsider its original final order had it done so after its administrative rules became effective.

revoke, or amend its original final order.[8]  Accordingly, we affirm the circuit court's order reinstating the OAH's original final order, and in turn, Mr. Thompson's driver's license.

Affirmed.

---

[8] Because we find that the OAH did not have the authority to revoke, reconsider, or amend its original final order, we do not need to address whether there was sufficient evidence to show that the DMV provided Mr. Thompson with notice regarding its motion for reconsideration.